UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

M.W. on Behalf of Herself and Her Minor Child, E.H.;
K.A. on Behalf of Herself and Her Minor Child, R.S.; W.K.C.
on Behalf of Herself and Her Minor Child, B.L.; M.D. on
Behalf of Herself and Her Minor Child, J.R.; L.T. on Behalf
of Herself and Her Minor Child, C.T.; T.S on Behalf of
Herself and Her Minor Child, K.S.;  J.R. on Behalf of Herself
and Her Minor Child, M.R.; L.M. on Behalf of Herself and
Her Minor Child D.H.; G.A. on Behalf of Herself and Her
Minor Child L.A.; A.D. on Behalf of Herself and Her Minor
Children S.D. and N.D.; C.W. on Behalf of Herself and Her
Minor Child K.P.; J.T.2. on Behalf of Herself and Her Minor
Child M.W1.; M.L. on Behalf of Herself and Her Minor Child
M.L.1.; Y.L. on Behalf of Herself and Her Minor Child
Y.L.1.; D.L. on Behalf of Herself and Her Minor Child
Y.L.2.; D.B. on Behalf of Herself and Her Minor Child U.B.;
J.O. on Behalf of Herself and Her Minor Child A.A.1; M.B.
on Behalf of Herself and Her Minor Child C.B.; J.B. on
Behalf of Herself and Her Minor Child A.B.; S.S. on Behalf
of Himself and His Minor Child P.S.; L.D. on Behalf of
Herself and Her Minor Child E.H.1; E.G. on Behalf of
Herself and Her Minor Child Y.G.; M.S. on Behalf of Herself
and her Minor Child A.S.; M.K.. on Behalf of Herself and
Her Minor Child M.K.1; S.S.1 on Behalf of Herself and Her
Minor Child J.S.; J.F. on behalf of Himself and his Minor
Child H.F.; A.P. on behalf of Herself and her Minor Child,
Y.A.;S.G. on Behalf of Herself and Her Minor Child A.A.1,
G.P. on Behalf of Herself and Her Minor Child J.T.1; Y.S. on
Behalf of Herself and her Minor Child, J.A.; L.F. on Behalf of
Herself and Her Minor Child C.N.; J.M. on Behalf of Herself
and Her Minor Child, S.M.;

                                   Plaintiffs,

       -against-

New York City Department of Education; New York City
Board of Education; Chancellor Richard Carranza, In His
Official Capacity,

                                Defendants.

Civ. No. 19-cv-00779
(SHS)(RWL)

FIRST
AMENDED
COMPLAINT

PRELIMINARY STATEMENT

1.      This is an action on behalf of children with disabilities and their parents who have filed impartial due process hearings under the IDEA, 20 U.S.C. § 1400, *et seq*. and who are entitled to, *inter alia*, the protections of the stay-put provisions of the IDEA, 20 U.S.C. § 1415(j).

JURISDICTION AND VENUE

2.      This Court has jurisdiction over Plaintiff's Federal claim for reasonable attorneys' fees and costs awarded to a prevailing party in an administrative proceeding under the IDEA pursuant to 20 U.S.C. § 1415(i)(3)(A), 42 U.S.C. § 1988, and as an action raising a Federal question under 28 U.S.C. § 1331.

3.      Venue lies in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) as the judicial district in which Defendants are situated and/or reside.

PARTIES

4.      M.W. is the parent of E.H., a child with a disability under the IDEA.

5.      K.A. is the parent of R.S., a child with a disability under the IDEA.

6.      W.K.C. is the parent of B.L., a child with a disability under the IDEA.

7.      M.D. is the parent of J.R., a child with a disability under the IDEA.

8.      L.T. is the parent of C.T., a child with a disability under the IDEA.

9.      T.S. is the parent of K.S., a child with a disability under the IDEA.

10.     J.R. is the parent of M.R. a child with a disability under the IDEA.

11.     L.M. is the parent of D.H., a child with a disability under the IDEA.

12.     G.A. is the Parent of L.A., a child with a disability under the IDEA.

13.     A.D. is the parent of M.D., and S.D., children with disabilities under the IDEA.

14.     C.W. is the parent of K.P., a child with a disability under the IDEA.

15.    J.T.2 is the parent of M.W.1, a child with a disability under the IDEA.

16.    M.L. is the parent of M.L.1, a child with a disability under the IDEA.

17.    Y.L. is the parent of Y.L.1, a child with a disability under the IDEA.

18.    D.L. is the parent of Y.L.2, a child with a disability under the IDEA.

19.    D.B. is the parent of U.B., a child with a disability under the IDEA.

20.    J.O. is the parent of A.A.1, a child with a disability under the IDEA.

21.    M.B. is the parent of C.B., a child with a disability under the IDEA.

22.    J.B. is the parent of A.B., a child with a disability under the IDEA.

23.    S.S. is the Parent of P.S., a child with a disability under the IDEA.

24.    L.D. is the parent of E.H.1, a child with a disability under the IDEA.

25.    E.G. is the parent of Y.G., a child with a disability under the IDEA.

26.    M.S. is the parent of A.S., a child with a disability under the IDEA.

27.    M.K. is the parent of M.K.1, a child with a disability under the IDEA.

28.    S.S.1 is the parent of J.S. a child with a disability under the IDEA.

29.    J.F. is the parent of H.F., a child with a disability under the IDEA.

30.    A.P. is the Parent of Y.A., a child with a disability under the IDEA.

31.    S.G. is the parent of A.A., a child with a disability under the IDEA.

32.    G.P. is the parent of J.T.1, a child with a disability under the IDEA.

33.    A.A.3 on behalf of I.S., a child with a disability under the IDEA.

34.    L.F. is the parent of C.N., a preschool child with a disability under the IDEA.

35.    J.M. is the parent of S.M., a child with a disability under the IDEA.

36.    All plaintiffs live within New York City in one of the five boroughs.

37.    Initials are used throughout this Complaint to preserve the confidentiality of sensitive medical, educational, and disability-related information under the IDEA and the Family Educational Rights and Privacy Act of 1974 ("FERPA").

38.    Upon information and belief, according to Defendants, THE NEW YORK CITY DEPARTMENT OF EDUCATION ("Department" or "DOE") is the official body charged with the responsibility of developing policies with respect to the administration and operation of the public schools in the City of New York, including programs and services for students with disabilities.  N.Y. Educ. Law § 2590-g (McKinney 1980).  It is a recipient of federal financial assistance.

39.    The DOE's central office is located in New York County.

40.    Defendant, THE NEW YORK CITY BOARD OF EDUCATION ("the Board of Education" or "the Board"), was or continues to be the official body charged with the responsibility of developing policies with respect to the administration and operation of the public schools in the City of New York.  It is a recipient of federal financial assistance.

41.    Upon information and belief, Defendant, RICHARD CARRANZA ("the Chancellor"), is the Chancellor of the New York City School District and is entrusted with the specific powers and duties set forth in N.Y. Educ. Law § 2590-h.

42.    All Defendants either jointly and/or individually constitute the "Local Educational Agency" under the IDEA.

## LEGAL FRAMEWORK

43.    The IDEA guarantees that all eligible children with disabilities, ages three through twenty-one, must be offered a FAPE.  20 U.S.C. § 1412(a) (1).

44.     A FAPE must meet each student's "unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d) (1) (A)-(B).

45.     A FAPE must "include an appropriate . . . secondary school education in the State involved"; and (d) be provided in conformity with an IEP. *See* 20 U.S.C. §§ 1401(9), 1414(d)(2)(A); 8 N.Y.C.R.R. § 200.4(e)(1)(ii).

46.     To be entitled to a FAPE, a child must have one or more of thirteen disabling conditions and, by reason of his/her disability, require "special education" and "related services." 34 C.F.R. § 300.8(a)(1).

47.     Defendants are responsible for providing a FAPE to all eligible children in New York City and for promulgating policies and procedures in accordance with the IDEA.

48.     Every child with the designated disability classifications is entitled to an Individualized Education Program, or "IEP" and the LEA (here, Defendants) must provide an IEP which must be individually tailored to each student and is meant to serve as a blueprint for each child's special education services. 20 U.S.C. § 1414(d).

49.     By the beginning of each school year, Defendants must have an IEP in place that offers a FAPE to each eligible child. 20 U.S.C. § 1414(d)(2).

50.     The IDEA and state and federal regulations prescribe, in detail, the process for developing IEPs and their contents. 20 U.S.C. § 1414(d)(1)(A), (d)(2); 34 C.F.R. §§ 300.320(a)(2)-(3); 300.324; N.Y. Educ. Law § 4401, *et seq.;* and 8 N.Y.C.R.R.§ 200.4(d)(2)(iii).

51.     Defendants are obligated to make decisions about IEPs, services and placements based on student's individual needs, and not policies, procedures or availability of resources.

52.    The Defendants are required to establish and maintain procedures in accordance with the IDEA to "ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a [FAPE]."  20 U.S.C. §1415(a).

53.    One of the IDEA's due process rights is the right to file a due process complaint ("DPC") "with respect to any matter relating to the identification, evaluation, or educational placement of [a] child" or the provision of FAPE to a child.  20 U.S.C. §1415(b)(6)(A).

54.    Thereafter, a parent "shall have an opportunity for an impartial due process hearing."  20 U.S.C. §1415(f)(1)(A).

55.    As soon as a due process complaint ("DPC") requesting a hearing is filed, Section 1415(j) of the IDEA requires that the Defendants ensure that they provide or fund the provision of "stay-put" services that constitutes the child's "last agreed upon-placement."

56.    The IDEA mandates that the student's "stay-put" placement and services be provided until a final, unappealed decision is reached in the case.  20 U.S.C. §1415(j); 34 C.F.R. § 300.518.

57.    A student's "stay-put" rights (also called "pendency") can be established by a last agreed upon or implemented IEP, a final, unappealed order of an impartial hearing officer, the State Review Officer, or the "operative" placement that was being provided as of the date the parent filed the DPC.

58.    A student's "pendency" can also be changed by a full or partial agreement between the parties.

59.    Pendency rights are supposed to be automatic and are unconditional, without regard to merit.

60.    That is, immediately upon filing of a DPC, Defendants are required to provide and/or fund the "last agreed upon placement" and services.

61.    When a child with a disability is not receiving is suffering irreparable harm.

62.    When a child with a disability is at risk of losing his or her special education and related services, the child is facing irreparable harm.

63.    Children who are entitled to pendency and/or FAPE who are being denied FAPE and pendency are suffering irreparable harm.

<u>SYSTEMIC FACTS CONCERNING PENDENCY</u>

64.    Although pendency rights are supposed to be automatic, in general, Defendants will not implement a student's pendency rights upon the filing of a DPC.

65.    Historically, Defendants would not implement pendency unless an impartial hearing officer ("IHO")  issued a "pendency order," even when a student's pendency was not in dispute.

66.    A pendency order is a written interim order issued by a hearing officer which directs Defendants to provide and/or fund the pendency services that a child is supposed to receive.

67.    To address pendency for the 2020-2021 school year, the Defendants have changed their policies and procedures.

68.    IHOs now have no ability to issue a pendency order or hold a pendency hearing for a new hearing that is filed, unless Defendants determine that the parties "disagree" as to the Student's pendency services and program and determine that pendency is "contested."

69.    Instead, pursuant to a new plan for the 2020-2021 school year, the parent and the Defendants, DOE, must execute a "Pendency Agreement" for all hearings that do not already have a pendency order in place.

70.    Defendants prevent Pendency Agreements being "so ordered" by an IHO or Court and the legal significance of these agreements is unclear.

71.    However, under Defendants' policies and procedures, Defendants will not enter into such pendency agreements until a DPC is "processed" by Defendants' Impartial Hearing Office.

72.    A DPC is "processed" after the Defendants assign it a case number and upload it into the system.

73.    There are delays – now several weeks – between the date on which DPCs are filed by parents and pendency is invoked, and the date on which the Defendants' "process" the DPC and assign it a case number.

74.    Defendants have failed to ensure that the DOE's Impartial Hearing Office ("IH Office") has the sufficient staff that they need to handle the volume of complaints.

75.    This issue pre-dated COVID, but has been worse this year due to the backlog and volume of complaints.

76.    Once the DOE's IH Office processed a DPC, the pendency agreement cannot be executed until the DOE assigns a representative who then negotiates the agreement.

77.    Once the request is processed, the DOE then has to assign a representative or lawyer. It can often take several days for the correct liaison to be assigned to a case.

78.    Assuming the DOE's representative and parent's representative agree to pendency, parent's representatives must complete a "Pendency Agreement" form that DOE created during the spring of 2020, when all of the schools and programs were shut down.

79.    Defendants did not update their form to address the change in circumstances.

80.    Defendants are currently insisting that parents execute a pendency form that was created back in the spring of 2020 during the time that the schools were completely shut down.

81.    This form seems to require parents to agree that pendency services provide remotely will automatically fulfill the pendency mandate, even if the parents do not agree that remote services in general (or as contemplated) are appropriate.

82.    The requirement that all parents must agree to remote services in order to obtain pendency at the present time violates their rights.  This is particularly true since many children have open schools to attend and/or providers available and willing to come to their homes, provided those services are delivered safely and/or consistently with state and federal guidelines.

83.    Defendants will not allow parents to obtain a hearing for a "contested" pendency based on an objection to this language.

84.    Assuming Defendants and the parent's representative agrees to pendency, and the form is executed, pendency is still not implemented.

85.    The next step is for the Pendency Agreement to be "processed" by the Defendants' Impartial Hearing Implementation Unit ("IHIU").

86.    There are delays between the time the parties execute the Pendency Agreement and the date on which the IHIU processes the Pendency Agreement.

87.    The IHIU's process of the Pendency Agreement involves uploading it into the system and, apparently, reviewing it and taking some action.

88.     The IHIU has not made the procedures for processing the Pendency Agreements public and thus it is not clear what is involved.

89.     The IHIU is significantly understaffed, as the unit is responsible for implementing all of the orders issued by IHOs.  This unit was understaffed well prior to the Pandemic.

90.     Once the Pendency Agreement is "processed," the IHIU has limited ability to undertake implementation directly.

91.     The IHIU can authorize payments to private providers and can liaison with various other offices in the DOE to request that certain actions be taken, such as arrange for transportation, or arrange for vouchers for related services ("Related Service Authorizations" or "RSAs") to be issued.

92.     Even when the parties agree to a student's pendency services, Defendants fail to implement the agreed upon pendency services, and in particular fail to timely fund services and issue authorizations for services.

93.     For cases that were filed and have pendency order

94.     Defendants rely heavily on private, independent providers to implement pendency for children whose parents file hearings.

95.     However, it has been the Defendants' position that they will not fund services in advance or enter into contracts with private providers.

96.     At the same time, many private pendency providers and schools will often not continue to allow enrollment or provide services until funding is secured (*i.e.*, until an enforceable pendency order is obtained).

97.     If they do choose to continue to serve the child, they often do so at their own risks.

98.    Defendants terminate authorization for pendency funding at the end of every school year, even if a hearing is still pending, due to a glitch in Defendants' computer system.

99.    Although there are thousands of children whose hearings do not end at the end of every school year (i.e. June 30th), the authorizations and services that Defendants IHIU implemented into the system automatically expire, including funding authorizations, transportation arrangements and vouchers.

100.    Thus, as a matter of law, on July 1st of every school year, like a pumpkin in the Cinderella story, Defendants terminate the pendency for every single child who has a hearing pending from the prior school years.

101.    Defendants' policies – caused by a computer system issue – causes a system-wide violation of pendency for every child who has a hearing pending.

102.    Further, this situation causes an enormous delay of payment to pendency providers,  and a significant amount of unnecessary work for the limited staff at the IHIU, taking them away from other duties.

103.    Defendants' payments to pendency providers are extremely delayed, dating back to a time well prior to COVID.

104.    Many pendency providers and schools have threatened to quit or terminate services based on delays.

105.    The individual parents here are only a fraction of examples of children who are at risk of losing pendency due to delays.

106.    The providers that agree to accept direct payments are generally serving families who cannot afford to engage in self-help.

107.    However, parents should not be forced into a situation where they have to risk their own finances to secure pendency rights.

108.    Beyond the above, Defendants have determined that even if there are no pendency services or placement for a child, they will now fight parents who seek to use the impartial hearing process to obtain a comparable placement.

109.    It is Defendants' recent position that even if a child has no services due to the fact that the pendency placement or program is no longer available, or Defendants have been unable to implement it,  IHOs are not allowed to issue interim orders for alternative services and parents must use the courts to seek prospective injunctive relief.

110.    Finally, it is Defendants' position  that children with Autism who receive 1:1 ABA *via* the Early Intervention System are not entitled to pendency in ABA services because there is no pendency between Part C (Early Intervention) and Part B of the IDEA.

111.    Circuits are split on this issue.

112.    Even if children with Autism there are no entitlements to pendency, children who transition into the CPSE and who – as a matter of policy – lose all of their 1:1 services, ABA services and home-based services due to a policy and practice of the Defendants are entitled to injunctive relief to prevent such automatic termination until such time as a true individualized determination of whether those services should continue is made by Defendants.

113.    Children who need 1:1 services, ABA and home-based instruction should not be forced to lose those services as a matter of policy and practice when they transition, which generally causes either extreme regression or stalls their progress during a critical developmental window.

FACTS CONCERNING STUDENTS
WHO HAVE PENDENCY RIGHTS AT, *INTER ALIA*, MCC AND/OR MBC

Facts Concerning M.W. and E.H.

114.    E.H. has been diagnosed with an autism spectrum disorder ("ASD").

115.    On July 8, 2013, M.W. through counsel, requested an impartial hearing under the IDEA by filing a Due Process Complaint ("DPC") with Defendants' impartial hearing office.

116.    The DPC alleged, among other things, that Defendants failed provide E.H. with a FAPE for the 2013-2014 SY.

117.    The DOE designated Plaintiff's hearing as Case Number ("Case No.") 145391 and assigned an impartial hearing officer ("IHO") to preside over the hearing.

118.    M.W. made an application for the IHO to issue an order under the stay-put provisions of the IDEA, to sure funding for E.H.'s after-school speech and language therapy and ABA services, along with tuition at the NPS program E.H. attended at the time.

119.    The IHO declined to issue a stay-put order.

120.    The DOE did not fund and/or ensure provision of the services to which E.H. was entitled as of the date the DPC was filed.

121.    Subsequently, the Plaintiff sought and obtained a preliminary injunction to implement the stay-put provisions of the IDEA.  *M.G. v. New York City Department of Education litigation*, 13-cv-4639 (SAS), Dkt. #18.

122.    Thereafter, M.W. and E.H. became part of the certified and subclasses classes in *M.G. v. New York City Dep't of Educ.,* 162 F. Supp. 3d 216 (S.D.N.Y. 2016).

123.     On January 26, 2016, the IHO in Case No. 145391 issued a Findings of Fact and Decision ("2016 FOFD"), finding that Defendants had denied a FAPE to E.H. and that E.H. was entitled to compensatory education.

124.     Defendants did not appeal the FOFD.

125.     Eventually M.W. moved E.H. from a state-approved private school that did not offer ABA services to a non-approved private school that offers ABA services ("MCC").

126.     By way of due process hearings, E.H.'s stay-put or pendency placement includes funding at MCC, as well as his wrap-around, extended day services of ABA and related service of speech and language therapy ("SLT")

127.     On June 29, 2017 M.W. filed a due process complaint ("DPC") seeking a hearing for the 2017-2018 school year which Defendants designated as Case No. 166731.

128.     Pursuant to his pendency rights, the Defendants were obligated to fund his stay-put placement at MCC, as well as the related entity of MBC, a center-based program, that provided extended day 1:1 ABA, as well as after-school SLT.

129.     On June 30, 2019, M.W. filed another DPC, which was designated as Case No. 183817, pursuant to which she was entitled to the above stay-put services.

130.     On March 30, 2020, the IHO in Case No. 166731 issued a FOFD, terminating E.H.'s pendency under that decision and awarding final relief.

131.     M.W. was a prevailing party in Case No. 166731.

132.     On April 23, 2020, the IHO in Case No. 183817 issued a pendency order establishing pendency retroactive to the filing of Case No. 183817.

133.     Case No. 183817 is still pending.

134.    On June 30, 2020, M.W. filed another DPC concerning the 2020-2021 school year, which was designed as Case No. 194888.

135.    As of the date of this complaint, Defendants have failed to timely fund MCC and MBC and has unreasonably delayed payments to those entities for an extended period of time.

136.    As a result,  MCC and MBC has advised that balances have to be made current on or before October 30, 2020, or E.H.'s enrollment will be terminated.

137.    Further, E.H. cannot remain at MCC and MBC unless Defendants pay invoices within 30 days of submission on a going forward basis.

Facts Concerning K.A. and R.S.

138.    R.S. has been diagnosed with ASD.

139.    K.A., R.S.'s mother, has had to file multiple DPCs seeking hearings to maintain R.S.'s placement in an ABA based private school, as well as his wrap-around, extended day ABA and related services.

140.    In fact, K.A. originally obtained prospective funding for the placement at MCC through a pendency injunction several years ago.

141.    K.A.'s most relevant hearings were designated as Case No. 173931, which was filed on June 26, 2018 concerning the 2018-2019 school year.

142.    Pursuant to Case No. 173931, Defendants were required to fund pendency placement and services at MCC, with wrap around ABA at MBC.

143.    On June 26, 2019, K.A. filed a DPC concerning the 2019-2020 school year, which was designated as Case No. 183825.

144.    The IHO in Case No. 173931 issued a decision on April 6, 2020 concerning the 2018-2019 school year.

145.    During the 2019-2020 school year, prior to COVID-19, Defendants provided limited travel time and a travel paraprofessional to R.S. to attend school.

146.    R.S. continued to have pendency rights to the same services by virtue of Case No. 183825.

147.    K.A. filed another hearing concerning the 2020-2021 school year, which was designated Case No. 194898, which is still pending.

148.    R.S. continues to have stay-put rights at MBC and MCC, as well as transportation, limited travel time and a travel paraprofessional which Defendants had been providing up until COVID-19 shut down the schools.

149.    As of the date of this complaint, Defendants have failed to timely fund MCC and MBC and has unreasonably delayed payments to those entities for an extended period of time.

150.    As a result,  MCC and MBC has advised that balances have to be made current on or before October 30, 2020, or R.S.'s enrollment will be terminated.

151.    Further, E.H. cannot remain at MCC and MBC unless Defendants pay invoices within 30 days of submission on a going forward basis.

 Facts Concerning W.K.C. and B.L.

152.    B.L. has been diagnosed with ASD and he also has a seizure disorder.

153.    W.K.C.'s native language is Cantonese.

154.    B.L. always attended private schools at the Defendants' recommendation but during middle school, he aged out of his program at a state-approved private school.

155.    Due to his need for limited travel time for his seizures, his well-documented need for an ABA-based school (which has been ordered for years but not implemented) and the fact that

there are no state-approved private schools for children with ASD who are high school age in Manhattan, B.L. was out of school for two years.

156.     J.C. has had multiple hearings and is entitled to pendency based on pendency and/or compensatory education orders arising from Case Nos. 159866, 166370, 174224 and 187837.

157.     The decision in Case No. 159866 initially issued on August 23, 2017.

158.     As a result of the final decision issued in Case No. 159866, pendency was established in services in MBC, as well as a wrap-around, home-based program of ABA and related services.

159.     Defendants have violated and are continuing to violate the decision in Case No. 159866, by refusing to reimburse the parent for assistive technology (two iPads) that she purchased and by failing to timely pay ABA providers.

160.     In March 2020, MBC advised families that unless they could pay in advance or pay out of pocket, they could not receive pendency services during the initial few months of remote learning.

161.     As Defendants refuse to pay for any services when payment is due or in advance, B.L. went without services until MBC determined it could afford to re-hire their staff and continue to wait for Defendants to make payments.

162.     In March 2020, Plaintiff W.K.C. shifted to remote learning with her wrap-around services and is now receiving a hybrid model of some remote services

163.     As of the date of this complaint, Defendants have failed to timely fund MBC and has unreasonably delayed payments to those entities for an extended period of time.

164.     Further, B.L. cannot remain at MBC unless balances are paid and Defendants pay invoices within 30 days of submission on a going forward basis.

165.    In addition, Defendants have not timely or appropriately paid or delivered services under the final and pendency orders for the applicable case numbers.

 Facts Concerning M.D. and J.R.

166.    J.R. has been diagnosed with ASD.  He also has a range of physical disabilities and feeding delays.

167.    His parent, M.D., has been litigating for an extensive time to try to obtain a placement and services for J.R., as he was without a school placement for approximately two years.

168.    M.D. filed DPC concerning the 2017-2018 school year, which was designated as Case No. 170297.

169.    The IHO in Case No. 170297 issued a final decision on May 15, 2019.  During that time, J.R. was entitled to stay-put services and J.R. was awarded compensatory education.

170.    M.D. also filed a DPC for the 2018-2019 school year designated as Case No. 174162, pursuant to which she obtained a favorable FOFD on July 17, 2019.

171.    M.D. filed a new hearing for the 2019-2020 school year in July 2019 which was designated as Case No. 184036.

172.    Defendants initially failed to clarify whether they would pay for services at MBC under either case numbers and although they eventually claimed to be in agreement with doing so, Defendants have not made any payments.

173.    M.D. obtained a favorable a final decision in Case No. 184036 on August 10, 2020.

174.     Plaintiff M.D. is a prevailing party for the purposes of the final decisions in Case No. 170297, 174162 and 184036

175.    Yet, this action is required as Defendants have failed to implement those decisions.

176.    On June 25, 2020, M.D. filed another DPC, which Defendants designated as Case No. 194718, pursuant to which J.R. is entitled to pendency.

177.    Defendants entered into a "pendency agreement."

178.    During the 2019-2020 school year, J.R. was initially placed at MBC for purposes of using his compensatory education, after which time the program was ordered and has become his stay-put placement, along with transportation and a 1:1 paraprofessional.

179.    As of the date of this complaint, Defendants have failed to timely fund MBC and has unreasonably delayed payments to those entities for an extended period of time.

180.    As a result,  MBC has advised that balances have to be made current on or before October 30, 2020, or J.R.'s enrollment will be terminated.

181.    Further, J.R. cannot remain at MBC unless Defendants pay invoices within 30 days of submission on a going forward basis.

182.    Defendants have also failed to implement transportation and a travel paraprofessional, as well as other services ordered in the favorable decisions.

 Facts Concerning L.T. and C.T.

183.    C.T. has been diagnosed with, *inter alia*,  ASD.  He also has delays in fine and gross motor skills, receptive, expressive and pragmatic communication.

184.    For several years, C.T. has been attending MCC and receiving after-school ABA services at MBC, as well as related services of SLT and OT.

185.    L.T. has had to litigate every single school year since 2010 to continue C.T's services and tuition.

186.    Usually, the DOE funds her SLT and OT via a related service authorization ("RSA") and the parent accepts the vouchers.

187.    On June 30, 2019,  L.T. filed a DPC concerning the 2019-2020 school year, which was designated by Defendants as Case No. 184048.

188.    The IHO issued a pendency order in Case No. 184048.

189.    L.T. filed a new DPC concerning the 2020-2021 school year, which was designated as Case No. 196192.  To date, there is no pendency order or agreement in that case, as pendency rights are still arising from the Case No. 184048.

190.    The IHO has not yet issued a final decision in Case No. 184048.

191.    L.T. also won a favorable decision concerning the 2017-2018 School Year, which was designated Case No. 166697.  L.T. is a prevailing party as a result of Case No. 166697.

192.    As of the date of this complaint, Defendants have failed to timely fund MCC and MBC and has unreasonably delayed payments to those entities for an extended period of time.

193.    As a result,  MCC and MBC has advised that balances have to be made current on or before October 30, 2020, or R.S.'s enrollment will be terminated.

194.    Further, C.T. cannot remain at MCC and MBC unless Defendants pay invoices within 30 days of submission on a going forward basis.

195.    Beyond the above, pursuant to C.T.'s pendency rights, Defendants are supposed to issue RSAs pursuant to pendency to fund C.T.'s after-school occupational and speech therapy.

196.    C.T. is not getting his related services yet.

197.    C.T.'s stay-put rights include a case for C.T.'s AAC device (an iPad) that he needs to communicate.  The case is required to amplify the sound.

198.    The case has been broken since October 2019.

199.    The IHO had ordered Defendants to replace the case, but they have ignored the orders.

200.    In addition, Defendants owe L.T. reimbursement for a program that she purchased.

Facts Concerning K.S. and T.S.

201.    K.S. has been diagnosed with ASD.  She also has been diagnosed with apraxia, and her expressive language skills are severely underdeveloped.

202.    Her parent, T.S., has been litigating for an extensive time starting with a DPC filed in 2016 challenging the Defendants' denial of a FAPE starting with the 2014-2015 school year.

203.    T.S. filed a hearing concerning the 2017-2018 school year, which was designated as Case No. 166695, pursuant to which an IHO issued a final decision on March 29, 2018.

204.    The decision provided for funding for services at MBC, which was supposed to cover K.S.'s funding at MBC.

205.    Pursuant to the decision in Case No. 166695, K.S. was supposed to receive funding at MBC for the date of the decision through the 2018-2019 school year.

206.    T.S. is a prevailing party with decision to the decision in Case No. 166695.

207.    T.S. had to file another DPC for the 2019-2020 school year, designated as Case No. 183813, pursuant to which she obtained a favorable FOFD,  again designating funding for services at MBC.

208.     On June 30, 2020, T.S. filed another DPC designated as Case No. 194900, pursuant to which K.S. is entitled to pendency.  To date, there is no pendency order or agreement in that case.

209.    As of the date of this complaint, Defendants have failed to timely fund MBC and has unreasonably delayed payments to those entities for an extended period of time.

210.    As a result,  MBC has advised that balances have to be made current on or before October 30, 2020, or J.R.'s enrollment will be terminated.

211.    Further, J.R. cannot remain at MBC unless Defendants pay invoices within 30 days of submission on a going forward basis.

212.    Defendants have also delayed implementation of her transportation and a travel paraprofessional.

Facts Concerning J.R. and M.R.

213.     M.R. has been diagnosed with, *inter alia*, ASD.

214.    His parent, J.R. filed a DPC concerning the 2017-2018 and 2018-2019 school years in January 2019, which was designated as Case No. 181086.

215.    J.R. received a favorable decision on February 8, 2020  (and corrected on March 2, 2020).

216.    J.R. was a prevailing party as a result of the February 8, 2020 decision.

217.    J.R. also filed a DPC for the 2019-2020 school year, which was designated as Case No. 184626.

218.    In Case No. 184626, an Interim Order on Pendency was ordered on April 22, 2020, directing pendency based on the decision in Case No. 181086, including placement at a state-approved non-public school with one-to-one ABA services along with related services.

219.    Pursuant to these decisions, J.R. was to be funded at MCC, with extended day ABA services to be provided by MBC.

220.    On July 2, 2020, J.R. filed another DPC designated as Case No. 195575, for the 2020-2021 school year.

221.    M.R. is entitled to pendency at MCC and MBC.

222.    As of the date of this complaint, Defendants have failed to timely fund MBC and has unreasonably delayed payments to those entities for an extended period of time.

223.    As a result,  MBC has advised that balances have to be made current on or before October 30, 2020, or J.R.'s enrollment will be terminated.

224.    Further, J.R. cannot remain at MBC unless Defendants pay invoices within 30 days of submission on a going forward basis.

Facts Concerning L.M. and D.H.

225.    D.H. has been diagnosed with, *inter alia*, ASD.

226.    Her parent, L.M. began filing hearings concerning the appropriateness of D.H.'s educational placement starting with the 2015-2016 school year.

227.    L.M. filed a DPC for the 2018-2019 school year, which was designated as Case No. 174240.  L.M. received a favorable decision February 12, 2019 and provided for placement at MCC and extended day services of ABA and parent training and counseling ("PTC").

228.    L.M. was a prevailing party as a result of the decision in Case No. 174240.

229.    L.M. filed a hearing for the 2019-2020 school year, which was designated as Case No. 185052.  However, a decision on pendency issued on August 4, 2019, providing for funding of the pendency services at MCC, with extended day ABA and PTC at MBC.

230.    On July 1, 2020, L.M. filed another DPC designated as Case No. 195475 concerning the 2020-2021 school year.  A decision on pendency issued on September 12, 2020, providing for funding for the pendency services.

231.    As of the date of this complaint, Defendants have failed to timely fund MCC and has unreasonably delayed payments to those entities for an extended period of time.

232.    As a result,  MBC has advised that balances have to be made current on or before October 30, 2020, or J.R.'s enrollment will be terminated.

233.    Further, J.R. cannot remain at MBC unless Defendants pay invoices within 30 days of submission on a going forward basis.

Facts Concerning L.A. and G.A.

234.    L.A. has been diagnosed with Autism.

235.    L.A.'s parent, G.A., filed a hearing with respect to the 2019-2020 school years which was designated as Case No. 186508.  In that case, G.A. received a favorable decision in which provided for, *inter alia*, tuition at MCC and compensatory ABA services.

236.    Defendants have not paid the parent for the 2019-2020 school year; Defendants have not reimbursed her for the time period during March 2020 forward.

237.    G.A. filed a new hearing for the 2020-2021 school year.  L.A. is entitled to pendency at MCC.

238.    Defendants should be making timely, direct payments to MCC during L.A.'s pendency there.

239.    Defendants should be making timely, direct payments to MCC during L.A.'s pendency there.

240.    G.A. should not have to front the funding for L.A.'s pendency.

FACTS CONCERNING STUDENTS
WHO HAVE FILED NEW HEARINGS
AND HAVE PENDENCY RIGHTS IN, *INTER ALIA*,
RELATED SERVICES AND SPECIAL EDUCATION TEACHER SERVICES

241.    Plaintiff parents of the following students have all filed DPCs during the first week in September 2020, for the, *inter alia*, 2020-2021 school year: M.D., and S.D., K.P., M.W.1, E.H.1, M.L.1, Y.L.1, Y.L.2, U.B., A.A.1, C.B., A.B., P.S. and Y.A.

242.    There was a multiple week delay between the time the DPCs were filed and the date on which Defendants "processed" the DPCs and assigned case numbers.

243.    All of the above students are entitled to related services and 1:1 special education teacher services as stay-put services.

244.    None of them have implemented pendency yet.

245.    Under Defendants policies and practices, Defendants did not process or consider implementing pendency from the date the DPC was filed until Defendants' office "processes" the request, assigns a case number, refers it to a representative,  enters into a pendency "agreement" (if the pendency is not disputed), sends it to the Defendants' IHIU, uploads it to the IHIU system.

246.     If the IHIU unit can process an authorization for a payment to a private provider, the unit will process such payment upon parent request.

247.    If the pendency is not for a payment, but for an RSA or another service, other offices of the Defendants are responsible.

248.    All of the students are entitled to an immediate prospective injunction for funding for their pendency services.  They should not have to engage in self-help and incur debt or expenses.

249.    All of the students have a provider ready and able to implement special education teacher services.

250.    Some of the students have providers ready to start providing related services upon issuance of the RSA or require related services to be issued directly.

251.     Y.A. has a resolution agreement from the prior year, which gives rise to his pendency rights and other entitlements.

252.    Defendants have not implemented this resolution agreement and do not have a procedure for doing so.

FACTS CONCERNING STUDENTS
WHO HAVE HEARINGS PENDING FROM 2019-2020
AND HAVE PENDENCY RIGHTS IN, *INTER ALIA*,
RELATED SERVICES AND SPECIAL EDUCATION TEACHER SERVICES

253.     The following children have pendency rights in related services and special education teacher services arising out of the fact that they have a pending due process hearing that has not yet resulted in a final decision and which is still pending from the 2019-2020 school year: E.H.1, Y.G., A.S., M.K.1, J.S. H.F.;

254.     All of the above students are entitled to related services and 1:1 special education teacher services as stay-put services.

255.     Defendants have not implemented their pendency for the 2020-2021 school year and, in some cases, has yet to implement and/or fund pendency for the prior 2019-2020 school year.

256.     Under Defendants policies and practices, when Defendants' IHIU system implements an approval for pendency services, that approval automatically expires on June 30th of every school year, even if a hearing is still pending.

257.     Defendants should immediately issue RSAs and implement pendency for these students, as well as timely pay for any outstanding services or school placements from the 2019-2020 school year.

FACTS CONCERNING STUDENTS WHO
REQUIRE EMERGENCY PROSPECTIVE
FUNDING FOR IDENTIFIED PROGRAMS

Facts Concerning S.G. and A.A.1

258.     Upon information and belief, Defendants will not make prospective payments unless ordered to do so by a Court.

26

259.    A.A.1's pendency placement is in a special education private school ("T.P.") in Manhattan with related services and transportation with limited time travel based on a decision of a hearing officer designated Case No. 189956 which was issued on August 25, 2020.

260.    S.G., requested a due process hearing for the 2020-2021 school year, which was designated as Case No.195469.    Under that case, A.A.1 is entitled to pendency.

261.    S.G. took out a loan to pay for the first installment of the tuition. However, she does not have any further access to funds.

262.    The next tuition payment is due on October 15, 2020.

263.    Defendants have not paid the school for pendency services yet.

264.    If Defendants do not pay for the private school by October 15, 2020, A.A.1 will lose his pendency spot and the school advised that they may have to furlough the responsible staff or move them to part-time.

265.    Plaintiffs have requested that the IHO order the Defendants to pay the school on or before October 10, 2020.

266.    A.A.1's parents are entitled to a prospective injunction for pendency funding at the pendency placement.

Facts Concerning J.T.1

267.    J.T.1's parents filed a due process hearing on  July 1, 2020 which was assigned Case No. 195459.  She has Autism and is entitled to pendency in a 6:1:3 private special education class that provides ABA with related services and transportation.

268.    Although Defendants refused to put ABA on the IEP, the private school that J.T.1 attended was an ABA-based program.

269.    Defendants have not been able to provide such a pendency as they do not offer this program or ABA and have refused to recommend her to a state-approved private school.

270.    J.T.1's parents have identified a private school, MSA, that has this program and provides ABA and related services.  It is available and has a seat for J.T.1.

271.    Defendants have refused to fund this program and, instead, have left J.T.1, out of school without any services or ABA to which she is entitled.

272.    J.T.1 is entitled to a prospective injunction for this comparable program and placement.

FACTS CONCERNING ADDITIONAL STUDENTS<br>WHO REQUIRE EMERGENCY RELIEF TO FUND ALTERNATIVE SERVICES

Facts Concerning Y.S. and J.A.

273.    J.A.'s parent, Y.S. filed a DPC in June 2019 concerning the 2017-2018 school year, which was assigned Case No. 183655.  At the time, he was a preschool student.

274.    J.A. was entitled to pendency in a special education class in a private school with a 12:1:2 ratio, with related services, but Defendants left him out of school for the entire 2019-2020 school year.

275.    The IHO in Case No. 183655 issued her decision in January 2020.

276.    Y.S. filed another hearing in January 2020, designated Case No. 192406.

277.    The Defendants did not assign an IHO to that case number for several months, due to delays.

278.    Finally, in the summer of 2020, the Defendants assigned an IHO and the IHO issued a pendency order in August 2020 directing Defendants to implement pendency for J.A.

279.    In early September 2020, Defendants' asked what alternative services Y.S. may want given that the pendency was not available.  Y.S. made a proposal but it was apparently ignored.

280.    On October 2, 2020, Y.S. filed a third DPC concerning the 2020-2021 school year.

281.    To date, J.A. has been out of school, as the Defendants not received any pendency services and has been out of school since September 2020.

282.    J.A. was awarded some tutoring in the first hearing and Y.S. started to use that in the summer and September.

283.    However, J.A. has no related services and no regular instruction.

284.    Y.S. is entitled to an injunction for the related services and the alternative services that she requested.

Facts Concerning L.F. and C.N.

285.    C.N. is a preschool student with ASD.

286.    He received 20 hours of 1:1 ABA services through the Early Intervention ("EI") System.

287.    When C.N. transitioned to the Committee on Preschool Special Education ("CPSE"), Defendants unilaterally terminated and refused to continue C.N.'s 20 hours of 1:1 ABA services pursuant to a policy at the CPSE that prevents IEP teams from offering ABA therapy to children who receive those services through Early Intervention, ignoring all of the reports and feedback from providers, doctors and the parent.

288.    Instead, Defendants utilized a few-sizes-fits-all model, insisting that C.N.'s only options were a class of 12, 8 or 6, without any ABA, 1:1 instruction or home-based services.

289.    Further, although Defendants offer 1:1 special education teacher services ("SEIT") to preschool age children in some districts, C.N.'s district CPSE administrator told L.F., that SEIT is not available at home and would only be available if C.N. attended a regular preschool.

290.    Plaintiff filed a DPC concerning the 2020-2021 school year.

291.    No IHO has been assigned.

292.    Plaintiff requested that Defendants implement the 20 weekly hours of 1:1 ABA services while the hearing is pending.

293.    C.N. – like all children who transition from EI to CPSE – and lose their ABA therapy, 1:1 instruction and home-based services overnight – is going to severely regress.

294.    C.N. cannot benefit from remote learning and requires 1:1 ABA and in-person services to make progress.

295.    C.N. does not have private insurance and the parents cannot afford to purchase it. Thus, C.N. cannot receive ABA through insurance.

296.    Defendants have only offered minimal remote instruction, pursuant to which C.N. receives 30 minutes of 1:1 remote ABA services per week, as well as some group zooms. C.N. is unable to attend to remote instruction.

Facts Concerning J.M. and S.M.

297.    S.M. is a child with severe autism and a disorder called Avoidant/Restrictive Food Intake Disorder ("ARFID").

298.    S.M. received 30 hours of ABA through EI, as well as related services.

299.    S.M. is supposed to be transitioning from the CPSE's jurisdiction to the Committee on Special Education ("CSE").

300.    When he transitioned to the CPSE, Defendants terminated his ABA services.

301.    Pursuant to an IEP by the CPSE, until the summer of 2019, Defendants had recommended 20 hours per week of 1:1 SEIT services with related services.  However, Defendants could never staff the services with appropriately trained providers, given S.M.'s severe needs, including his ARFID, which is life threatening.

302.    For the 2019-2020 school year, S.M. was moved to a private, state approved preschool in Queens that provides ABA services, although "ABA" was not listed on his IEP.  Further this class is officially listed as a 6:1:3 classroom, but the school, in fact, provides 1:1 and 2:1 instruction, although Defendants are not allowed to list this on an IEP.

303.    During the year, Defendants did not implement his limited travel time, leaving his parent to arrange for travel between Manhattan and Queens.

304.    After COVID, S.M. was unable to receive any services as he could not benefit from remote instruction and requires 1:1 instruction and ABA to make progress.  Further, providers must be appropriately trained; if the wrong strategies are used, S.M. stops eating, creating a life threatening condition.

305.    J.M. filed a DPC on September 11, 2020.

306.    To date, the DPC has not been processed or assigned a case number or an IHO.

307.    No pendency services or substantial equivalent have been offered.

308.    J.M. is entitled to a prospective injunction for 1:1 home-based ABA services, and related services.

309.    His mother has partial funding for ABA services through her insurance and could facilitate partial payment for services if transportation and additional funding is ordered.

 The Statute of Limitations Does Not Bar Claims that Accrued on or after March 20, 2020

310.    Governor Andrew Cuomo tolled the statute of limitations under all New York State statutes as a result of the Pandemic.

311.    Executive Order 202.08 dated March 20, 2020 states "any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding, as prescribed by the procedural laws of the state, including but not limited to the criminal procedure law, the family court act, the civil practice law and rules, the court of claims act, the surrogate's court procedure act, and the uniform court acts, or by any other statute, local law, ordinance, order, rule, or regulation, or part thereof, is hereby tolled from the date of this executive order until April 19, 2020."

312.    Executive Order 202.14 "continue[s] the suspensions and modifications of law, and any directives, not superseded by a subsequent directive, made by Executive Order 202 and each successor Executive Order to 202, for thirty days until May 7, 2020"

313.    Executive Order 202.28 "continue[s] the suspensions and modifications of law, and any directives, not superseded by a subsequent directive, made by Executive Order 202 and each successor Executive Order up to and including Executive Order 202.14, for thirty days until June 6, 2020."

314.    Executive Order 202.38 "continue[s] the suspensions and modifications of law, and any directives, not superseded by a subsequent directive, made by Executive Order 202 and each successor Executive Order up to and including Executive Order 202.28, for thirty days until July 6, 2020."

315.    Federal Courts adopt the three-year statute of limitations in the CPLR 214(2) to claims concerning IDEA attorney's fees claims, as the IDEA does not include a limitations period for filing such claims. *Robert D. v. Sobel*, 688 F.Supp. 861 (S.D.N.Y. 1988)

316.    As Federal Courts adopt state limitations periods, New York State tolling rules will apply. *Board of Regents of University of State of N. Y. v. Tomanio*, 446 U.S. 478 (1980).

317.    The applicable statute of limitations in New York relating to attorney's fees and all other claims, to the extent they would have been time-barred, were tolled by the above referenced Executive Orders issues by the New York State Governor.

318.    A six year statute of limitations should apply to Defendants' obligations under an order, which is the time frame such a claim would have under New York law.

319.    Further, some of the claims raised here are continuing violations.

320.    Plaintiffs' claims for equitable and declaratory relief are timely filed regardless of the toll.

321.    Plaintiffs' claims for compensatory services and additional equitable relief are not time-barred.

322.    To the extent that Defendants still owe services or relief under orders, they do not expire.

323.    Even if the claims are otherwise untimely, they should be equitably tolled in light of the Pandemic and the fact that Defendants represented to Plaintiffs that they wished to settle and then withdrew their agreement to settle the Fee Claim.

324.    To the extent that individual Plaintiffs received final decisions described herein, they are entitled to payment of reasonable legal fees for work performed in connection with the impartial hearings and implementation of the ordered services.

325.    Plaintiffs are entitled to reasonable legal fees for the instant action.

326.    The fees and costs charged by Plaintiffs' counsel are consistent with market rates for the legal services performed, in light of counsels' experience and expertise and the complexity of the issues.

<u>CAUSES OF ACTION</u>

FIRST CAUSE OF ACTION
THE IDEA

327.    Plaintiffs repeat and re-allege the allegations of all the above paragraphs as if fully set forth herein.

328.    Defendants' application of blanket policies, practices procedures violate the IDEA.

329.    Defendants' failure to implement appropriate policies, procedures and practices to ensure timely and continued implementation of Plaintiffs' pendency rights violates the IDEA.

330.    Defendants' failure to implement appropriate policies, procedures and practices to ensure implementation of resolution agreements violates the IDEA.

331.    Defendants' failure to ensure adequate comparable services for Plaintiffs whose pendency is no longer available violates the IDEA.

332.    Defendants' conduct results in a wholesale denial of FAPE to Plaintiffs.

SECOND CAUSE OF ACTION
SECTION 504 OF THE REHABILITATION ACT

333.    Plaintiff repeats and re-allege the allegations of all the above paragraphs as if fully set forth herein.

334.    Defendants' conduct is knowing, intentional, reckless, and gross.

335.    Plaintiffs are qualified individuals with disabilities entitled to protection under Section 504.

336.    Defendants discriminated against Plaintiffs under Section 504 by, *inter alia*, denying him reasonable accommodations, adopting systemic policies, procedures and practices that violate A.B.'s rights under the IDEA and New York State law, and engaging in widespread and pervasive violations of the IDEA and New York State Education law.

337.    Defendants discriminated against  Plaintiffs under Section 504 by, *inter alia*, committing extensive, repeated, gross, knowing and reckless violations of multiple provisions of the IDEA and New York State law.

### THIRD CAUSE OF ACTION
42 U.S.C. § 1983

338.    Plaintiffs repeat and re-allege the allegations of all the above paragraphs as if fully set forth herein.

339.    Defendants have violated 42 U.S.C. §1983 by depriving Plaintiffs, under color of state law, of their rights, privileges, and immunities under federal statutory and constitutional law.

340.    By implementing, promulgating, and continuing to enforce and/or effectuate policies, practices, and customs as alleged herein, Defendants have denied A.B. the educational services to which he is entitled under the IDEA and New York law, in violation of 42 U.S.C. § 1983.

341.    By failing to supervise and train their employees and agents concerning the federal and state laws and policies concerning general and special education services, Defendants have violated 42 U.S.C. § 1983.

342.    By failing to ensure that pendency is timely implemented and secured, Defendants violated 42 U.S.C. §1983.

343.    The Defendants violated Plaintiff's rights under 42 U.S.C. § 1983 by failing to have adequate policies, procedures, protocols, and training to ensure that the provisions of the IDEA and Section 504 referenced herein were complied with, which deprived A.B. of his right to a free and appropriate education under federal and state law.

344.    Under color of state law, the Defendants deprived Plaintiffs of their right to special education services  educational services afforded to him under New York State law, in violation of the Fourteenth Amendment of the U.S. Constitution.

345.    As a direct and proximate result of the Defendants' misconduct, Plaintiffs have suffered and will continue to suffer harm, unless Defendants are enjoined from their unlawful conduct.

FOURTH CAUSE OF ACTION
NEW YORK LAW

346.    Plaintiffs repeat and re-alleges the allegations of all the above paragraphs as if fully set forth herein.

347.    Defendants have violated Plaintiffs' rights under New York Constitution, the New York State Education Law §§ 3202, 3203, 4401, 4404 and 4410 and the Regulations of the New York State Commissioner of Education, 8 N.Y.C.R.R. §200, *et seq.*

CONCLUSION

WHEREFORE, Plaintiff respectfully requests that the Court:

i.    Assume jurisdiction over this action;

ii.    Issue Emergency Injunctive Relief on behalf of the individual children and parent Plaintiffs who seek uncontested pendency;

iii.   Issue Emergency Injunctive Relief on behalf of the individual children and parent Plaintiffs whose pendency is contested or not available;

iv.   Issue a Declaratory Judgment on behalf of the Plaintiffs that the policies, procedures, and practices as alleged herein violate the applicable federal and state laws;

v.   Issue a Final Judgment directing Defendants to modify their policies, practices and procedures that violate the laws or result in a deprivation of pendency rights;

vi.   Award Plaintiffs who have obtained final decisions the relief that they seek which has not been implemented as well as attorneys' fees and costs;

vii.   Award Plaintiff M.W. attorneys' fees and costs for the injunction obtained in *M.G. v. New York City Dep't of Educ.*;

viii.   Award Plaintiffs attorneys' fees and costs incurred with respect to this action; and

ix.   Award such other, and further, relief as to the Court may seem just and proper.


Dated:        October 2, 2020
              New York, New York

                                    Respectfully submitted,
                                    Elisa Hyman, Esq.

                                           */s/ Elisa Hyman*
                                    By_____
                                    Elisa Hyman, Esq.
                                    The Law Office of Elisa Hyman
                                    1115 Broadway, 12th Floor
                                    New York, NY 10010
                                    Phone: (646) 572-9064
                                    Fax: 646-572-9065
                                    elisahyman@gmail.com
                                    *Attorneys for Plaintiff*