UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
M.W., et al.,                                    :
                                                 :
                          Plaintiffs,            :
                                                 :
            - against -                          :
                                                 :                    19-CV-779 (SHS) (RWL)
                                                 :
NEW YORK CITY DEPARTMENT OF                      :
EDUCATION; et al.,                               :              **DECISION AND ORDER:**
                                                 :          **PARTIAL SUMMARY JUDGMENT**
                                                 :
                          Defendants.            :
---------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge**

Plaintiffs are a group of parents who seek to enforce their respective child's rights to a free appropriate public education ("FAPE") under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq*. ("IDEA").  The circumstances of each plaintiff's claims vary, and the parties have settled the claims of several plaintiffs.  Some of the remaining disputes concern allegations that Defendant New York City Department of Education ("DOE") has failed to implement relief previously awarded by an impartial hearing officer ("IHO").  In the interest of resolving those matters expeditiously, the parties consented to a modified partial summary judgment procedure for resolution by the undersigned.[1]  Presently before the Court are the parties' summary judgment filings with

---

[1] The procedure included letter briefing with limited exhibits and consent to my jurisdiction for resolving the motions.  (*See* Dkts. 167 at 2, 169 at 2, 177 at 3, 211.)  The parties did not file, and the Court did not request, statements of material fact under Local Rule 56.1.  Plaintiffs submitted the Declaration of Elisa Hyman, dated December 12, 2025 at Dkt. 200, sponsoring exhibits that include administrative orders and other documents.  Citations to exhibits herein are to those materials.  DOE did not submit any affidavits or exhibits.

respect to four students: B.L., C.T., H.F., and J.R.  (*See* Dkts. 199, 207, 208.)  Having reviewed the parties' arguments and the limited record, the Court determines as follows.

## Standard For Summary Judgment

The Court applies the familiar standards governing motions for summary judgment. Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505 (1986).  The Court's task is not to resolve contested issues of fact, but rather to determine whether there exists any disputed issue of material fact.  *Donahue v. Windsor Locks Board of Fire Commissioners*, 834 F.2d 54, 58 (2d Cir. 1987).  "A fact is material when it might affect the outcome of the suit under governing law."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks and citation omitted).  A dispute "is 'genuine' … if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  The Court construes all evidence submitted on the motion "in the manner most favorable to the nonmoving party."  *Okin v. Village of Cornwall-On-Hudson Police Department*, 577 F.3d 415, 427 (2d Cir. 2009) (internal quotation marks omitted).  "To defeat a summary judgment motion," however, "the non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."  *Federal Deposit Insurance Corp. v. Great American Insurance Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (internal quotation marks and citations omitted).

**Student-Plaintiff B.L. (Parent W.K.C.)**

The B.L. dispute concerns reimbursement for two iPads W.K.C. purchased – at the direction of school personnel – pursuant to an August 2016 IHO decision (the "2016 Decision"). (Ex. A.)  The IHO found that the iPads were necessary to B.L.'s education because using the iPads was "the only manner in which he can functionally communicate in a relatively consistent manner." (*Id*. at ECF 30.)  Although initially disputing that the 2016 Decision awarded reimbursement for the iPads, DOE later agreed in 2023 to reimburse W.K.C. for the principal amount paid for the two iPads, $1,628.78. (Dkt. 208 at 1 (referring to DOE's agreement to pay in 2023); Dkt. 207 at 2 (DOE stating that it "already indicated to Plaintiff's attorney that payment was authorized"); *see also* Ex. E (September 2022 email from DOE employee indicating that DOE was prepared to reimburse W.K.C. in the amount of $1,628.78).)

The parties dispute, however, whether DOE must pay interest on the principal amount.  Plaintiffs contend that W.K.C. is entitled to interest for the more than nine years that have elapsed without payment since the August 2016 Decision and that interest should be calculated at the New York statutory rate of nine percent, for total interest in the amount of $1,340.03.  DOE disagrees that W.K.C. is entitled to interest at all, arguing that the 2016 Decision was unclear as to whether or not the IHO had awarded reimbursement for the iPads and that, in any event, pre-judgment interest generally is not awarded in IDEA cases, citing *E.K. v. NYC Department of Education*, No. 23-CV-11276, 2025 WL 2753258 (S.D.N.Y. Sept. 26, 2025).

DOE is correct that "[p]rejudgment interest is generally not awarded." *Doe v. East Lyme Board of Education*, 962 F.3d 649, 662 (2d Cir. 2020) (*East Lyme II*).  Still, pre-

3

judgment interest "may be ordered in the district court's discretion to ensure that a plaintiff is fully compensated or to meet the remedial purpose of the statute involved." *Id*. (internal quotation marks and citation omitted); *accord E.K.*, 2025 WL 2753258, at *3 (stating that "[a] district court may award prejudgment interest to an IDEA plaintiff if, in the court's discretion, interest is necessary to fully compensate the wronged party, based on fairness and the relative equities of the award, the remedial purpose of the statute involved, and any other principles a district court deems relevant") (internal quotation marks omitted) (citing *Wickham Contracting Co. v. Local Union No. 3, International Brotherhood of Electrical Workers*, 955 F.2d 831, 833-34 (2d Cir. 1992)).

Where, as here, a parent has been awarded reimbursement but the DOE fails to pay for many years, denying interest would effectively give the DOE an interest-free, long-term loan, while depriving the parent of the opportunity to immediately use the funds or to generate interest on the principal owed. Awarding pre-judgment interest for an extended delay is consistent with IDEA's remedial purpose. Declining to award pre-judgment interest in such circumstances would provide a perverse incentive for DOE to delay reimbursement that it is required to pay. *E.K.* is distinguishable in that respect; the court denied pre-judgment interest because the delay of eight months was not "unusually protracted," and awarding interest was not necessary to "fully" compensate the plaintiff. 2025 WL 2753258, at *3.

That said, the Court agrees with DOE that the 2016 Decision is not a model of clarity about the iPad award. On one hand, the 2016 Decision expresses the IHO's "belie[f] [that the Parent] is entitled to be reimbursed for both" and that there are no "equitable considerations which militate against supporting the Parent's claim to reimbursement."

4

(Ex. A at ECF 30, 32.)  On the other hand, the final relief paragraph of the 2016 Decision does not explicitly award reimbursement for the iPads; recites that the parent had already purchased iPads and that if one later became damaged or no longer functional, DOE is obligated to replace it; and that "[a]s stated in the Parent's closing argument, [the Parent] is not currently requesting that the DOE purchase these items." (*Id*. at 34.)  In the Court's view, the varying statements can be reconciled.  First, that the parent did not request DOE to "purchase" iPads is not inconsistent with the parent's request for reimbursement; inasmuch as the parent had already purchased the two iPads, the parent did not need DOE to purchase them for her – but she did need compensation for what she had already paid to purchase them.  Second, it would be fully consistent for the IHO to have both awarded reimbursement for the two iPads already purchased by the parent and also to have required DOE to replace either iPad if it later broke.

At bottom, the IHO determined that B.L.'s parent "is entitled to be reimbursed for both" iPads.  (Ex. A at ECF 30.)  It is undisputed that DOE, at least as of the parties' submissions, did not do so, even though DOE agreed over two years ago to reimburse the principal amount.  In the circumstances of this case, pre-judgment interest is warranted. The applicable interest rate, however, is not the New York statutory rate of nine percent. Rather, the rate should be that which Plaintiffs acknowledge is "consistent" with the Second Circuit decisions, on which Plaintiffs rely, that have awarded pre-judgment interest in IDEA cases – the federal one-year constant maturity yield rate.  (Dkt. 208 at 1 (citing *East Lyme II*, and *Streck v. Board of Education of East Greenbush Central School District*, 408 F. App'x 411, 414-15 (2d Cir. 2010).)

Accordingly, W.K.C. is granted judgment in the amount of $1,628.78 plus interest,

calculated from August 22, 2016 (the date of the 2016 Decision) at the federal one-year maturity yield rate.

### Student C.T. (Parent L.T.)

C.T. is an adult with autism.[2]  During his secondary-school years, C.T. received IHO "stay-put" orders in his favor.  Those orders required DOE, pending final resolution of the parties' disputes concerning his individualized education program ("IEP"), to "fund" both C.T.'s tuition for private school, and a variety of school-related services, including home-based speech-language therapy and occupational therapy (collectively, the "Pendency Related Services").[3]  (*See* Exs. G-L, O.[4])  According to Plaintiffs, during the full pendency period (2019-2020 school year through 2022-2023 school year), L.T. attempted to locate

---

[2] IDEA requires states to provide disabled students with a FAPE through the age of 21. *See* 20 U.S.C. § 1412(a)(1)(A).

[3] "The stay-put provision of the IDEA provides that during the pendency of any proceedings conducted pursuant to [20 U.S.C. § 1415], unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child.  The purpose of the provision is to maintain the educational status quo while the parties' dispute is being resolved.  It therefore requires a school district to continue funding whatever educational placement was last agreed upon for the child until the relevant administrative and judicial proceedings are complete." *Doe v. East Lyme Board of Education*, 790 F.3d 440, 452 (2d Cir. 2015) (*East Lyme I*) (internal quotation marks and citations omitted); *see also Ventura de Paulino v. New York City Department of Education*, 959 F.3d 519, 531 (2d Cir. 2020) ("Congress's policy choice was that a child is entitled to remain in his or her placement at public expense during the pendency of an IEP dispute, regardless of the merit of the child's IEP challenge or the outcome of the relevant proceedings").

[4] The IHO orders and uncontested pendency program descriptions of record were issued on the following dates:  July 20, 2019 (Ex. O), October 30, 2019 (Ex. G), December 19, 2020 (Ex. H), January 13, 2021 (Ex. I), December 30, 2022 (Ex. J), March 1, 2023 (Ex. K), and October 19, 2023 (Ex. L).  The October 30, 2019 order references a decision and order dated August 21, 2019 that required DOE to fund tuition and services for C.T.  The exhibits submitted by Plaintiffs do not include that particular order.

private providers to deliver the Pendency Related Services but succeeded in finding only one provider to furnish only some of the mandated services and for only part of the pendency period.  (Dkt. 199 at 4.)  There is no evidence of record that DOE did anything to affirmatively identify and provide Pendency Related Services for C.T.

Based on the foregoing, L.T. claims that DOE failed in its obligation to implement the Pendency Related Services for C.T. and therefore should be required to provide compensatory educational services.[5]  In particular, L.T. asks that DOE be required to establish an escrow account in the amount of $143,031 that can be used to provide related services for the purposes of executing C.T.'s post-secondary transition program.  L.T. asks that DOE also be required to provide associated transportation services.  Finally, L.T. seeks reimbursement in the amount of $300 plus tax and nine-percent interest for an assistive technology application purchased for C.T.  (Dkt. 199 at 4-6.)

## A.    Pendency Related Services

The parties' dispute turns on whether DOE merely had the obligation to "fund" C.T.'s Pendency Related Services in the event that L.T. located a particular service provider on her own, or whether DOE also had the duty to affirmatively find a provider to deliver those services regardless of whether L.T. secured a provider.  DOE argues that while it was

---

[5] Compensatory educational services are an appropriate remedy for a school district's failure to implement stay-put orders.  As the Second Circuit has explained: "Compensatory education is prospective equitable relief, requiring a school district to fund education beyond the expiration of a child's eligibility as a remedy for any earlier deprivations in the child's education. In other words, compensatory education aims to make up for educational services the child should have received in the first place.  Where … an educational agency has violated the stay-put provision, compensatory education may – and generally should – be awarded to make up for any appreciable difference between the full value of stay-put services owed and the (reimbursable) services the parent actually obtained." *East Lyme II*, 962 F.3d at 659 (internal quotation marks and citations omitted).

required to fund the Pendency Related Services, it was not required to "provide" them; and, now that C.T. has graduated, DOE's obligation to fund the services is "extinguish[ed]." (Dkt. 207 at 3.)  L.T. argues that the burden to "implement" pendency orders falls on DOE, and that because DOE has the obligation to provide a FAPE, DOE cannot shift the burden of implementation to the parents.  (Dkt. 208 at 2.)

Plaintiffs are correct in a general sense.  DOE is responsible for implementing a stay-put order.  *See, e.g.*, *L.V. v. New York City Department of Education*, No. 03-CV-9917, 2021 WL 663718, at *5 (S.D.N.Y. Feb. 18, 2021) ("Orders that are not appealed, such as those at issue here, are 'final,' and DOE's only lawful course of action is to implement them").  But exactly what DOE is responsible to implement "turns on the precise language in each student's administrative order."  *Donohue v. Banks*, No. 22-CV-8998, 2023 WL 6386014, at *1 (S.D.N.Y. Sept. 30, 2023); *see also Davis v. Banks*, No. 22-CV-8184, 2023 WL 5917659, at *4 (S.D.N.Y. Sept. 11, 2023) ("the existence and extent of the DOE's reimbursement obligations turn on the language of the applicable administrative order").  Here, the IHO ordered that C.T. was "entitled" to the Pendency Related Services and required DOE to "fund" those services.  (Exs. G at 2, L at 14; *see also* Ex. J  at 20 (ordering DOE to "fund any un-funded pendency services received by the student").)  The IHO also required that the funds be paid "directly" to the providers, rather than by reimbursement, which would have required the parent to front payment for the services.  (Ex. L at 14; *see also* Exs. I (requiring "Direct" payment to provider), K (same).)  None of the orders, however, address who is responsible for finding a qualified and available service provider.

Plaintiffs argue that "[c]ourts have rejected the type of argument" made by DOE here, citing two cases – *J.Z. v. New York City Department Of Education,* No. 23-CV-9779,

2024 WL 1833613 (S.D.N.Y. 2024), and *East Lyme I.* (Dkt. 208 at 2). Neither case advances the ball for Plaintiffs. To the contrary, *J.Z.* cuts against Plaintiffs.[6] In *J.Z.*, like here, DOE did not dispute that the students were legally entitled to receive pendency related services, arguing instead that "DOE was merely required to fund, but not directly provide, them." 2024 WL 1833613, at *5. To determine whether DOE was correct, the court looked to the express language of the IHO's orders. The order with respect to one student, E.S., required DOE to "continue **to provide** the services that had defined pendency" in a prior order. *Id.* (emphasis in original). Reasoning that the order did not "state that the DOE was required only to 'fund' the ordered services," the court found that E.S. was entitled to "provision" of the services. *Id.*

Two other orders concerned a different student, A.F. One order required DOE to "fund" the student's placement in certain services and instructed: "If the parent makes a request in writing and/or email for the DOE to find and/or provide the pendency services directly, the DOE must do so within fifteen days of the request." (*J.Z.*, No. 23-CV-9779, Dkt. 20-5 at 5.) A.F.'s parent did make such a request, thus "trigger[ing] the DOE's obligation to provide A.F.'s services directly." *J.Z.*, 2024 WL 1833613, at *6. In contrast, a second IHO order addressing A.F.'s pendency related services warranted a different outcome based on language absent from the order. Specifically, the order required DOE to fund the service "but [did] not contain the same language requiring the DOE to provide it directly upon the parent's request." *Id.* "Nor," the court noted, "did [the parent] specifically request that particular service" in the request made for the services required

---

[6] The decision in *J.Z.* resolved a motion for preliminary injunction. It thus determined the plaintiffs' likelihood of success on the merits and was not a final decision on the merits.

by the first order.  *Id.*  "Accordingly, while [the parent] may be entitled to ***funding*** for [the service] for A.F., Plaintiffs have not demonstrated a likelihood of success on the merits regarding the direct provision of this service."  *Id*. (emphasis in original).

*J.Z.* thus does not categorically require DOE to locate and provide a given pendency related service whenever it is required to "fund" that service.  To the contrary, according to *J.Z.*, the requirement to "fund" is distinct from the requirement to "provide."  *J.Z.* found that DOE was responsible for affirmatively providing services only where the IHO order used the language of provisioning, or expressly required DOE to provide the services directly if requested by the parent.  Neither direction exists in the IHO orders at issue here.  The IHO orders concerning C.T. direct DOE to "fund" the Pendency Related Services, do not use terms such as "provide," and do not include any directive that the DOE locate and provide the services upon the parent's request to do so.  Further, there is no evidence before the Court that L.T. ever requested DOE to identify a service provider.  Rather, the only parent communications with DOE in the record about Pendency Related Services provided to C.T. are an email chain between L.T.'s attorney and DOE concerning payment to the provider that L.T. had found and used to deliver some of the required services for some of the time.[7]  (Ex. M.)  Under such circumstances, *J.Z.* supports DOE's position, not Plaintiffs.[8]

---

[7] Plaintiffs submitted the communications with DOE as proof that "DOE significantly delayed payment to [the provider], which ultimately ceased providing services to C.T. through the 2022-2023 school year."  (Dkt. 199 at 4.)  To the extent Plaintiffs mean to suggest that the provider discontinued services because of the delayed payments, Plaintiffs have not provided sufficient proof in the instant record for the Court to make that finding.

[8] The Court does not decide here whether L.T. would be entitled to judgment in her favor if there were proof that she had requested DOE to designate a qualified related service

Unlike *J.Z.*, *East Lyme I* did not address the issue posed by *C.T.*'s case.  In *East Lyme I*, the student's last operative IEP provided that the parent would pay for the student's tuition at a private school, while the board of education would pay for related services.  *Id.* at 446.  The DOE nevertheless refused to pay for the related services during the pendency of the parties' dispute over the adequacy of the student's IEP.  *Id.* at 452.  The parent paid for related services herself, to the extent she could afford them, and sought reimbursement as well as relief with respect to hours that she could not afford to pay but were included in DOE's stay-put obligation.  The district court granted summary judgment in the parent's favor based on DOE's refusal to pay.  *Id.* at 447.  The Second Circuit affirmed.  *Id*. at 154.  The court also determined that the parent was entitled not only to reimbursement for what she had paid out of pocket for the related services, but also compensatory education for the balance of hours awarded but for which the parent did not pay and receive.  *Id*. at 456-57.  The Second Circuit explained its rationale:

> The award in this case was calculated in a way that would undermine the stay-put provision by giving the agency an incentive to ignore the stay-put obligation.  If it turns out in the end that the parent was able to finance all the services, the agency would simply pay what it should have paid in the first place. … On the other hand, if the parent cannot afford to finance all or any services, the agency gets to pay less than what it should have, or nothing – and, more important, less than what was needed for the child's benefit.  Moreover, such

---

provider notwithstanding the absence of an express directive in the stay-put orders requiring DOE to do so upon request.  Further, the Court does not address – and more robust briefing would be needed to determine – (i) whether it is legally permissible under IDEA for an IHO to require only funding of related services in a pendency order without also requiring that DOE identify a viable services provider to deliver those services, and, relatedly (ii) whether IDEA requires DOE to locate and tender a viable related services provider, regardless of whether the parent requests DOE to locate a provider and regardless of the language used in the IHO order.

> an arrangement would make the stay-put obligation contingent
> on the means of a child's family – a legally irrelevant variable.

*Id.* at 456.

Plaintiffs assert that the same rationale applies here.  (Dkt. 199 at 3.)  The Court agrees that DOE cannot shirk its stay-put obligations by placing the burden of payment on the parent.  But unlike in *East Lyme I*, there is no evidence of record here that DOE refused to fund the services to which C.T. was entitled.  That is a critical distinction in light of the language of the IHO orders discussed above.[9]

In sum, the record does not support granting summary judgment in favor of C.T.[10] Inasmuch as the Court denies summary judgment on L.T.'s compensatory pendency claim, summary judgment also is denied with respect to her claim for associated transportation services.

**B.    Reimbursement For Assistive Phone App**

---

[9] Two other cases cited by Plaintiffs also do not address the issue presented here.  *See Ventura de Paulino*, 959 F.3d at 536 (holding, inter alia, that "[t]he stay-put provision of the IDEA, which was enacted to limit a school district's broad authority to determine or modify a child's educational program without the parents' consent, does not eliminate the school district's authority to determine how, and where, a student's agreed-upon educational program is to be provided at public expense"); *T.M. ex rel. A.M. v. Cornwall Central School District*, 752 F.3d 145, 165-67 (2d Cir. 2014) (in the context of a claim for reimbursement, holding that a school district cannot refuse to offer a least-restrictive placement merely because the district does not have such a setting but can offer to place the child in a private setting or other educational program that satisfies that obligation).  Those cases, however, do recognize that DOE has a "preexisting and independent authority to determine **how** to provide the most-recently-agreed-upon educational program," and that "it is up to the school district to decide how to provide that educational program, at least as long as the decision is made in good faith."  *Ventura de Paulino*, 959 F.3d at 534 (emphasis in original) (internal quotation marks omitted) (citing *T.M.*, 752 F.3d at 171).

[10] As the Court denies summary judgment on the merits of C.T.'s claim, the Court does not address whether providing a compensatory escrow account for use as transitional services would be an appropriate remedy.

DOE does not dispute that L.T. is entitled to reimbursement for C.T.'s assistive technology program.  (Dkt. 207 at 3.)  DOE has not reimbursed L.T., however, asserting "[u]pon information and belief" that L.T. has "has not yet submitted supporting documentation (i.e.  receipt or invoice) for this claim."  (*Id.*)  L.T. asserts that DOE has not specified what documents remain outstanding but has not submitted any proof that she provided DOE with any documentation to substantiate the purchase.  The parties also disagree about whether DOE is required to pay interest.

The IHO order dated July 19, 2019, directed that DOE "provide funding for the touch chat application on [C.T.]'s iphone in an amount not to exceed $300.00 plus tax within 10 days of receipt of this Order."  (Ex. O at 4.)  The order does not set any precondition to DOE's obligation to pay.  While the language "not to exceed" suggests there could be scenarios under which DOE would fund an amount less than $300, the order does not provide any.  Moreover, the order sets a firm deadline for funding – ten days.  It is undisputed that DOE did not pay L.T. an amount not to exceed $300 to fund the phone application within 10 days of the July 19, 2019 order.  Even so, L.T. has not provided any evidence that L.T. did in fact acquire and pay for the program, and, if so, at what cost. L.T. has not argued that DOE was required to pay her $300 regardless of whether she actually purchased the program and regardless of its actual cost.  Nor has she argued that DOE was required to pay L.T. $300 and then seek reimbursement from L.T. of any amount exceeding the actual cost of the program.[11]  In short, L.T. has not satisfied her burden on summary judgment with respect to payment for the assistive technology program.

---

[11] *Cf. Ventura de Paulino*, 959 F.3d at 535 (explaining that while a parent may sue for reimbursement under IDEA, "public funding for pendency services can never be recouped" by the school district).

The Court suggests, however, that further litigating this issue may not be practical given the amount involved, and that the parties resolve the dispute by having L.T. submit either a receipt, or an invoice, or a sworn statement attesting to whether she purchased the program, when she did so, and for what amount.  DOE should then pay that amount (up to $300) within ten days.  Given the failure of proof at this juncture, the Court does not find it appropriate to award pre-judgment interest on the amount of the assistive technology program.

### Student  H.F. (Parent J.F.)

H.F. is a high-school aged student with a disability.  It is undisputed that IHO pendency orders required DOE to fund 476 hours of 1:1 special education teacher services and 68 hours of occupational therapy for the period September 19, 2019 to April 27, 2021. (*See* Dkt. 199 at 6; Exs. P at 3, Q at 3.)  Plaintiffs assert that DOE discontinued services during the COVID-19 pandemic and that counsel had worked with DOE to establish a compensatory services bank to make up for the difference in hours.  (Dkt. 199 at 6.) Nothing in DOE's opposition disputes that.  To the extent pendency services were not provided as required, H.F. is entitled to summary judgment.  But that is not the end of the inquiry.

The parties' dispute focuses on whether and to what extent the compensatory services bank was established and the amount of time that remains available, and who bears the burden of providing that information.  Plaintiffs assert that they  "cannot confirm" if a bank was established, "and, if so, how many compensatory hours may be in the bank for  H.F.'s  use."   (*Id.* at 6-7.)   Plaintiffs  therefore  requested  DOE  to  identify  any compensatory hours that DOE "had voluntarily authorized for this time period" but did not

receive a response. (*Id.* at 7.) DOE apparently did not satisfy that request and argues that DOE is not obligated to provide it because the IHO orders do not require DOE to provide an "accounting." (Dkt. 207 at 3.) According to DOE, Plaintiffs are "best situated to know how many hours of services H.F. accessed during the pendency period at issue" because H.F. attended a non-public school pursuant to the relevant pendency order. (*Id.*) Plaintiffs respond that "[i]f the DOE provided, funded and/or arranged for pendency, the DOE should have a record of having done so." (Dkt. 208 at 3.)

The Court agrees with Plaintiffs that for purposes of implementing pendency, the burden of determining the number of hours of pendency services provided does not fall on the parent and child. Rather, it resides with DOE. For purposes of summary judgment, however, Plaintiffs still bear the burden of proof as the moving party. While DOE asserts that "on information and belief" DOE paid one provider for a scant 42 hours of services (Dkt. 207 at 3), Plaintiffs still must introduce evidence of the extent to which services were not provided. That cannot be determined without discovery. As such, at this juncture, H.F. is not entitled to summary judgment.

Plaintiffs argue that at a minimum H.F. is entitled to partial summary judgment awarding H.F. the full value of pendency services from September 2020 through April 27, 2021: 224 hours of 1:1 teacher services and 32 hours of occupational therapy. (Dkt. 208 at 3.) According to Plaintiffs, parent "J.F. asserts that … after the schools closed in March 15, 2020 and moved to remote instruction due to COVID-19, the DOE did not provide any [of the required services] to H.F." (*Id.*) The cited support for that assertion is Exhibit S, a 29-page chain of emails. Putting aside that Plaintiffs do not provide a page cite for J.F.'s assertion, the series of emails is unsworn, non-admissible hearsay as to what J.F. asserts.

15

Without more, the Court does not have a basis to grant partial summary judgment as to the number of compensable hours owed.

**Student J.R. (Parent M.D.)**

The parties do not dispute that on March 2, 2020 (just prior to New York City's "shutting down" during the COVID-19 pandemic), an IHO issued a decision in J.R.'s favor requiring DOE to "provide for a bank" of compensatory education hours "to be available over the next two years." (Ex T at 14-15.) The First Amended Complaint alleges that DOE "failed to timely fund" payment of services and suggests that J.R. received at least some of the services ordered. (Dkt. 33 ¶¶ 222-24.) J.R. seeks summary judgment on liability that DOE did not comply with the IHO's order to provide the hours awarded. (Dkt. 199 at 7.) DOE opposes, appearing to argue that J.R. forfeited any unused hours that were not used during the two-year period after March 2, 2020. (Dkt. 207 at 4.) Whatever the allegations and arguments, the factual record for this dispute is barren. The Court has not received any evidence about the extent to which services were or were not provided, whether DOE ever refused payment, what the DOE did or did not do in the wake of the pandemic shutdown with respect to the services ordered, whether DOE and parent M.D. ever communicated about failure to provide the services ordered, etc. In short, there is no factual record on which the Court can grant summary judgment, and Plaintiffs' motion for summary judgment with respect to J.R. is denied.

**Conclusion**

For the foregoing reasons:

16

1.      Summary judgment is granted in favor of W.K.C.  Within 30 days of this decision and order, DOE shall pay W.K.C. $1,628.78 plus interest, calculated from August 22, 2016 (the date of the 2016 Decision) at the federal one-year maturity yield rate.

2.      Summary judgment is denied with respect to L.T.'s claims on behalf of C.T.

3.      Partial summary judgment is granted in favor of J.F. awarding H.F. a compensatory bank of any hours awarded during pendency that DOE did not provide. Summary judgment is denied, however, with respect to determining the number of compensable hours in the bank.

4.      Summary judgment is denied with respect to M.D.'s claim on behalf of J.R.

To the extent not discussed above, the Court has considered the parties' arguments and found them to be either moot or without merit.

The Clerk of Court is respectfully directed to terminate the motion at Dkt. 199.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: February 24, 2026
        New York, New York

Copies transmitted this date to all counsel of record.

17